IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOHN C.,<br>     Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>     Defendant. | Case No. 4:21-cv-04168-JEH |

**Order**

Now before the Court is the Plaintiff John C.'s Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 13), and the Plaintiff's Reply (Doc. 14).[1] For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

John C. filed an application for disability insurance benefits (DOB) on March 29, 2018, alleging disability beginning on February 4, 2016. His DIB claim was denied initially and upon reconsideration, and a hearing before the Honorable Susan F. Zapf (ALJ) was held thereafter, on January 7, 2020. At that hearing, John was represented by an attorney, and John, his wife, and a vocational expert (VE) testified. The ALJ next issued an unfavorable decision, but the Appeals Council (AC) ultimately remanded the case in October 2020 for the ALJ to evaluate the

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 5, 6).
[2] References to the pages within the Administrative Record will be identified by AR [page number].  The Administrative Record appears at (Doc. 8) on the docket.

1

medical necessity of an assistive device, give further consideration to John's RFC, and properly evaluate his medical source's medical opinions.

A second hearing was held on February 16, 2021, before the same ALJ. At the second hearing, John was represented by the same attorney, and he again testified as did a different VE. Following the hearing, John's DIB claim was denied on April 14, 2021. His request for review by the AC was denied on August 24, 2021, making the ALJ's April 2021 Decision the final decision of the Commissioner. John timely filed the instant civil action seeking review of the ALJ's April 2021 Decision on October 13, 2021.

## II

John challenges the ALJ's Decision for the following reasons: 1) the ALJ erred in improperly assessing opinion evidence from John's treating physician; 2) the ALJ erred in assessing whether an assistive device was medically necessary; 3) the ALJ erred in improperly assessing John's subjective complaints; and 4) the ALJ erred in improperly assessing John's residual functional capacity.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1)  is performing substantial gainful activity;

2)  suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)  suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)  is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, John claims error on the ALJ's part at Step Four.

## A

At Step one, the ALJ determined John had not engaged in substantial gainful activity since February 4, 2016, the alleged onset date. AR 28. At Step Two, the ALJ determined John had the following severe impairments: degenerative disc disease and asthma. *Id*. At Step Three, the ALJ determined John did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 30. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and/or stairs, and can occasionally stoop, crouch, crawl and balance. He must avoid concentrated exposure to extreme cold, extreme heat and humidity, and to fumes, odors, dusts, gasses and poor ventilation. He can no more than occasionally reach overhead bilaterally. He can engage in frequent but not constant handling and fingering bilaterally. He can never reach overhead with the bilateral upper extremities.

*Id.*[3] At Step Five, the ALJ determined that considering John's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that John could perform. AR 37. Thus, the ALJ concluded John had not been under a disability from February 4, 2016 through the date of the Decision, April 14, 2021. AR 38.

### B

### 1

John first argues that the ALJ just summarized medical records that supported a finding of not disabled and omitted or misconstrued records that supported John's allegations and treating doctor Emmanuel C. Nwumeh, M.D.'s opined-to restrictions that would preclude all work. The crux of his argument is that the ALJ erred where he discredited Dr. Nwumeh's opinions as based upon subjective evidence which, instead, was objective evidence. The Commissioner counters that the ALJ sufficiently supported her analysis of Dr. Nwumeh's opinions, which the ALJ found lacked supportability and consistency with the other substantial evidence.

Pursuant to 20 C.F.R. § 404.1520c(a), an ALJ is required to consider the persuasiveness of medical opinions using several factors, though the most important factors are supportability and consistency. *See also* 20 C.F.R. § 404.1520c(b)(2) (providing the factors of supportability and consistency "*are the most important factors* we consider when we determine how persuasive we find a medical source's medical opinions . . . to be") (emphasis added); 20 C.F.R. § 404.1520c(c)(1) (providing that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be");

---

[3] While there appears to be a discrepancy between "can no more than occasionally reach overhead bilaterally" and "can never reach overhead with the bilateral upper extremities," no party mentions it and so the Court will address it no further.

20 C.F.R. § 404.1520c(c)(2) (providing the factor of consistency will be considered when considering medical opinions such that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be"). Here, at the outset of considering the medical opinions of record, the ALJ stated that those opinions "have little support in or consistency with the record as a whole." AR 35.

The ALJ explained it was "necessary to clarify" that Dr. Nwumeh's May 2019 medical source stated (MSS) finding John significantly limited in sitting, standing, walking for even short distances, and lifting and finding John unable to engage in extended reaching bilaterally, bending at the waist, squatting, kneeling, working on ladders, and operating a company vehicle or its hazardous machinery was "generally persuasive." AR 35. She elaborated the opinion was persuasive because "it, along with the other medical evidence as listed by the undersigned in the 2020 decision supports the finding that the claimant is restrict to a reduced range of sedentary work." *Id.* The ALJ also explained, specifically with regard to Dr. Nwumeh's December 2015, September 2016, August 2017, and May 2019 MSSs, that she considered those "checkbox forms that were routinely used by Dr. Nwumeh to report the claimant's work status to his employer throughout the treatment record[.]" AR 36.

Delving into her particular reasons for finding Dr. Nwumeh's opinions not sufficiently persuasive of disability so as to entitle John to benefits, the ALJ began with her observation that "it is clear by the succession of records that these were only temporary restrictions, as the claimant was scheduled for another appointment to determine [John's] release back to work shortly after each." *Id.* The ALJ also considered that Dr. Nwumeh's contemporaneous examinations

6

revealed that John was always positive for subjective tenderness, reduced lumbar flexion, and sometimes extension due to pain, but he was always neurologically stable. From evidence of only one positive straight leg raise test and difficulty lifting his legs at an ER visit in September 2016, reports of diminished sensation and reflexes in the left leg at a 2016 pain clinic examination, decreased strength with no estimate of deficit at an April 2019 ER visit, and mild (4/5) lower extremity weakness at a July 2019 neurological examination, the ALJ reasoned those findings were "notably rare" in the record and were never observed by Dr. Nwumeh who most regularly examined John. *Id*. The ALJ thus found that Dr. Nwumeh's contemporaneous examinations did not support debilitating symptoms, and, in turn, his opinions were not supported by either his own examinations or the record as a whole.

Next, the ALJ identified internal inconsistencies in Dr. Nwumeh's 2017 and 2019 MSSs; he noted John could barely lift any weight, but assessed John remained capable of sedentary physical activity in the 2017 form and of light activity in the 2019 form. The ALJ then rejected Dr. Nwumeh's indication that John was likely never to be able to return to work where "the determination of inability to perform certain work or to assess that the claimant is disabled" was reserved to the Commissioner and could not be delegated. *Id*. The ALJ again concluded Dr. Nwumeh's opined-to restrictions *omitted from* the RFC and his conclusion that John would likely never work again were not persuasive, in particular, because they were not supported by his own examinations or the record as a whole. As for Dr. Nwumeh's January 2021 MSS, the ALJ recited the opined-to limitations at that time and concluded, "In the same manner that the doctor's prior opinions are not convincing, this one is not supported by or consistent with the medical evidence." *Id*.

The ALJ more than sufficiently articulated her assessment of the evidence such that this Court can trace the path of her reasoning with regard to Dr. Nwumeh's multiple opinions. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). In so doing, the ALJ made clear that she also correctly applied 20 C.F.R. § 404.1520c in that she paid particular attention to the supportability and consistency of Dr. Nwumeh's opinions. She also certainly relied upon substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

To repeat, in rejecting Dr. Nwumeh's more extreme opined-to limitations for John, the ALJ referred back to the record as a whole in addition to Dr. Nwumeh's own examinations. Elsewhere in her Decision, the ALJ observed that John's June 2018 consultative physical examination was unremarkable where he had normal strength, range of motion, sensation, and reflexes throughout. At a December 2020 ER visit for low back pain, John had no swelling, edema, or deformity and had full grip, quadriceps, hamstring, plantar, and dorsiflexion strength, and was neurologically unremarkable with intact sensation and no motor weakness or abnormal muscle tone. At a neurological consultation in February 2021, John was neurologically unremarkable with normal muscle tone. The ALJ detailed John's 2019 MRI revealed degenerative changes, "but such were described in terms such as mild, small, minor and not worrisome." AR 33. John's electromyography/nerve conduction velocity testing was normal with no evidence of neuropathy or radiculopathy of the upper or lower limbs. His 2021 lumbar spine MRI revealed postsurgical change with areas of slight disk bulge and

foraminal narrowing in the lower lumbar spine, but grossly unchanged from the prior 2019 exam.  His 2021 cervical spine MRI noted mild diffuse disk bulge and disk height loss at C6-C7 and mild to moderate right-sided osseous foraminal narrowing.  The ALJ observed John did not receive the medications or treatment prescribed for severe and unremitting pain, the usual objective signs of severe pain were not indicated in the record, and she mentioned John's activities of daily living.

With regard to evidence more favorable to John's claim (and as he clearly believes, supportive of the extent of limitation to which Dr. Nwumeh opined), the ALJ acknowledged that John's examinations were "always positive for subjective tenderness and reduced lumbar flexion, and sometimes extension, due to pain," that he had a greatly reduced active range of lumbar motion at his June 2018 consultative examination, that he had mild stiffness in rotation of the neck and slight weakness in the hands when examined by Dr. Nwumeh in 2020, and that he had some mid-thoracic muscle tightness in February 2021.  While John argues the ALJ "cherry picked" the record, the Decision, read as a whole and detailed above, disproves that argument.  *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (explaining that it is proper to read the ALJ's decision as a whole).

As for the crux of his argument - that the ALJ erred where he discredited Dr. Nwumeh's opinions as based upon subjective evidence which, instead, was objective evidence – commonsense dictates otherwise.  True, the record includes numerous instances during objective examination where John was positive for tenderness and restricted range of motion in his back (and sometimes neck), but an element of subjectivity remains in those "objective" examination results.  After all, many of the notations specifically provided there was reduced motion "due to pain."  A doctor can observe a patient stop moving, but whether the patient stopped moving due, in fact, to pain actually felt is a different matter.  As for John

charging the Commissioner with post-hoc rationalization insofar as the ALJ did not explicitly explain why less weight was entitled to a checkbox form, the Commissioner did not violate the *Chenery* doctrine. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (explaining *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943), "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"). The ALJ specifically described Dr. Nwumeh's MSSs as appearing in "checkbox form" and stated that such forms were "routinely used by Dr. Nwumeh[.]" AR 35-36. The ALJ was rather obviously implying Dr. Nwumeh's curt answers just were not enough. And those curt answers – e.g., imaging results – were undermined elsewhere in the ALJ's Decision.

**2**

John next argues that the ALJ did not accept any of the medical opinions stating a cane was medically necessary, instead substituting her own medical opinion for that of Dr. Nwumeh. John's argument in this regard, as with his challenge to the ALJ's consideration of Dr. Nwumeh's opinions, faults the ALJ for "only citing to evidence supporting the need for a cane and dismissing it because it is based on subjective complaints." Plf's MSJ (Doc. 10-1 at pg. 13). The Commissioner counters the ALJ's finding that John's cane was not medically necessary was reasonable and supported because the ALJ cited several exams and imaging that showed that the record largely lacked medical documentation establishing the need for a cane.

> SSR 96-9p states in relevant part:
>
> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p at *7. This shows John is incorrect in arguing that testimony alone is enough to establish the need for a cane. Also, given the striking similarities between the parties' arguments regarding Dr. Nwumeh's opinions and the medical necessity (or not) of John's cane, the Court's analysis as to the former similarly applies to defeat John's challenge to the ALJ's findings as to the latter. In other words, the ALJ built a logical bridge from the evidence to her conclusion that John's cane or walker were not medically necessary, and the ALJ relied on substantial evidence in so concluding.

To briefly illustrate, the ALJ conceded that treatment notes between mid-2016 and 2019 consistently indicated John ambulated with a cane or walker ("presence of either cane or walker throughout much of the record is patently clear"), John did have a prescription for both the cane and the walker, John refused to walk without his cane at his June 2018 consultative physical examination, and Dr. Nwumeh opined in January 2021 that John needed to have a cane or assistive device when standing. AR 33. But the ALJ contrasted that ever-present observed use of a cane or walker with evidence that John displayed only mild difficulty getting on and off the exam table, that instances of positive testing results which "tangibly demonstrated symptoms" were "merely sporadic considering the record as a whole," and only a few instances where the need for [use of a cane or a walker] was "objectively demonstrated" but "not enough to support an ongoing limitation." AR 34. Earlier, the ALJ highlighted MRI imaging results used terms such as mild, minor, and only mild to moderate. The ALJ noted most of the reports of John's cane use were based upon John's subjective statements. Because the ALJ made no error in considering Dr. Nwumeh's opinions, as discussed *supra*, the ALJ made no error in considering such evidence for purposes of deciding whether John's cane was medically necessary. In his Reply, John cites to all the foregoing evidence and insists the logical conclusion is *not* that a cane is *not* medically

necessary. The Court finds otherwise; the ALJ reached a logical conclusion from her consideration of the evidence. In the end, an ALJ's decision must be affirmed as long as the ALJ identifies supporting evidence and builds a logical bridge from the evidence to the conclusion, and that is true "even if reasonable minds could differ about the ultimate disability finding." *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

**3**

With regard to his subjective complaints, John argues that instead of following the Social Security Administration's requirements, the ALJ created a list of her own requirements that the claimant allegedly failed to meet. He also argues that the ALJ cited to evidence throughout the Decision that supported his statements regarding his impairments and their limiting effects, but the ALJ improperly concluded the opposite. The Commissioner argues the ALJ sufficiently articulated why she found that John was limited, but not disabled.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

As an initial matter, the Court will not fault the ALJ for her errant statement that "the record is not consistent with the complete inability to work." AR 32. It is apparent in light of the extensive discussion of the evidence that the ALJ included in her Decision, recited herein, that the ALJ applied the correct standards.

Next, as detailed above, the ALJ considered the objective medical evidence, John's continued statements and reports of chronic neck and back pain, John's statements that he lost concentration and focus due to pain, the treatment John received, and his activities of daily living. In particular, the ALJ considered John's representations that he could not sit, stand, and/or walk for longer than 10 minutes at a time, that his legs would go numb, that his left leg tended to buckle when he walked, and that he could not tolerate repetitive lifting or carrying. While John underwent one spinal fusion surgery in 2003 and he took several medications including medical marijuana for pain, the ALJ observed John did not take the strong codeine or morphine-based analgesics usually prescribed for severe and unremitting pain, had not undergone continuing treatment beyond office visits and prescriptions for pain medication such as physical therapy or the use of a TENS unit, and signs of abnormal weight loss or muscle atrophy were not indicated in the record. The ALJ considered the instances between 2016 and 2019 of John's diminished sensation and reflexes, upper and lower extremity deficits, intermittent right arm paresthesia, slightly decreased grip strength on the right, and lower extremity weakness revealed during neurological examination. Connecting the dots, the ALJ went on to state there was a "substantial discrepancy between the claimant's physical findings and his complaint" where John was "always" neurologically stable at examinations by Dr. Nwumeh who most regularly examined John and where objectively positive findings were rare and only mild in intensity. The Court does not see where the ALJ created a list of her own requirements; it is clear she applied the factors set forth in 20 C.F.R. § 404.1529(c).

In doing so, the ALJ ensured her subjective symptom assessment was reasoned and supported. The ALJ's supported rejection of Dr. Nwumeh's opinions as a whole, one of which being that John could not engage in handling

13

and fingering activities, means the ALJ's rejection of John's statements that he was limited in that way was supported.  Same with the ALJ's rejection of John's statements that he could not sit.  The ALJ obviously credited John's statements of limitation in standing and/or walking due to his impairments where the ALJ restricted him to sedentary work in the RFC.  John says the ALJ failed to properly consider his allegations of pain, weakness, and instability which were supported by the evidence.  Crucially, here, the ALJ in fact considered that evidence but explained why the evidence as a whole did not support the *extent* of intensity, persistence, or limitation in pain, weakness, and instability John alleged.  While the ALJ should have provided a more accurate picture of the manner in which John performed his daily activities, the Decision reveals the ALJ did not place an undue emphasis on those activities in her subjective symptom evaluation.  *See Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (explaining an ALJ "can appropriately consider a claimant's daily activities when assessing his alleged symptoms" but must not "plac[e] undue weight on the claimant's household activities in assessing the claimant's ability to hold a job outside the home"); *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013) (unpublished opinion) (explaining the ALJ's adverse credibility finding was not patently wrong where the ALJ did not place "undue weight" on the claimant's activities of daily living and "specified several reasons for finding [the claimant] not credible").  The Court is thus satisfied the ALJ's subjective symptom analysis is not patently wrong.  *See Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (reiterating that the Seventh Circuit court of appeals "will uphold an ALJ's credibility determination unless that determination is patently wrong'"); *and Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014) (explaining "patently wrong" means "the decision lacks any explanation or support").

**4**

John lastly, and summarily, argues that the ALJ failed to consider both the medical and non-medical evidence and failed to consider the aggregate effects of his impairments when assessing the RFC. He says that specifically, the ALJ failed to incorporate restrictions for using an assistive device, being off-task due to pain, missing work more than two days per month, and limitations in standing and walking. The Court agrees with the Commissioner that the ALJ's narrative was in accordance with SSR 96-8p.

SSR 96-8p provides in relevant part, "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p at *7. Here, as the Commissioner succinctly puts it, the ALJ's Decision as a whole reflects that she discussed substantial evidence, including John's subjective allegations as to symptom severity, medical source opinion evidence, examination results and imaging, John's treatment history, and his activities of daily living before making her RFC finding for sedentary work with several other restrictions. The ALJ's consideration of the evidence for purposes of deciding the persuasiveness of Dr. Nwumeh's opinions, of deciding whether the use of a cane/walker was medically necessary, and of assessing John's subjective statements as to his symptoms, see *supra*, shows a narrative discussion that met the minimal articulation standard. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("We have repeatedly stated [ ] that an ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability"). The Court will not remand this case.

**IV**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 10) is DENIED and the Defendant's Motion for Summary Affirmance (Doc.

13) is GRANTED.  The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, John C., is AFFIRMED."  This matter is now terminated.

*It is so ordered.*

Entered on March 10, 2023.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE